IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BOBBY FORD**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. **00-71-CJP** |
| ) | |
| **THOMAS F. PAGE, et al.,** ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

Before the Court is defendants' Renewed Motion for Judgment as a Matter of Law with Supporting Brief. **(Doc. 143)**. Plaintiff has filed a Reply. **(Doc. 144)**.

Plaintiff Bobby Ford filed suit pursuant to 42 U.S.C. § 1983 alleging that defendants, members of the staff at Menard Correctional Center, violated his constitutional rights by subjecting him to excessive force on December 8, 1997, being deliberate indifferent to his serious medical needs on the same date, and by being deliberately indifferent to his serious medical needs on January 12, 1998.

The parties consented to final disposition by a magistrate judge and waived their jury demands **(Docs. 97 and 131)**, and the case was tried before the undersigned on March 7 and March 8, 2005. At the close of plaintiff's case-in-chief and at the close of all the evidence, defendants requested time to file written motions for judgment as a matter of law under **Fed. R. Civ. P. 52(c)**.

Pursuant to **Rule 52(a)**, "the court shall find the facts specially and state separately its conclusions of law thereon." **Rule 52(c)** provides that:

If during a trial without a jury a party has been fully heard on an issue and the court finds

1

against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.

### Findings of Fact and Conclusions of Law as to Count 8

The case went to trial on Counts 8 and 9 of the amended complaint, **Doc. 10.** Count 8 was directed to Parnell, Best, Higgins, Page, Hughes, Hasemeyer, Carter, and Goforth. In Count 8, plaintiff alleges that, during and after a cell extraction on December 8, 1997, Parnell, Best, Higgins, and Hughes used excessive force on him, causing him physical injuries and then denied him medical treatment. He alleges that Hasemeyer, Carter, Goforth, and Page were also deliberately indifferent to his serious medical need for treatment of injuries suffered on December 8, 1997.

The Court makes the following findings of fact with regard to Count 8:

1.  On December 8, 1997, plaintiff, upset at the result of an adjustment committee hearing on a previous disciplinary report, put a towel in the toilet and flooded his cell in the segregation unit at Menard Correctional Center. (Tr. 4).

2.  Defendants Parnell, Hughes, Best and Higgins, who were correctional officers, came to plaintiff's cell. (Tr. 4).

3.  Parnell told plaintiff to cuff up. Plaintiff refused, and Parnell opened the chuckhole and sprayed mace at Plaintiff. Plaintiff used his pillow to block the mace. Eventually, Plaintiff got mace in his eyes, and he then turned around and allowed Higgins to put the cuffs on. (Tr. 5).

4.  The Court finds plaintiff's testimony that Best got a 7 or 8 foot long broom handle and used it to poke Plaintiff in the groin and stomach to be not credible. Hughes testified that

there was no such stick on the gallery. (Tr. 24).

5. Plaintiff testified that, after he came out of the cell, he was thrown to the floor and "attacked." He was then lifted up and carried to the infirmary; his head and shoulder were bumped into the wall on the way. Once inside the infirmary, Hughes, Higgins and Best beat him. (Tr. 6). The Court finds this testimony to be not credible.

6. Plaintiff admits that, in the HCU on December 8, 1997, he received treatment from a med tech for the mace in his eyes. (Tr. 6).

7. Plaintiff received a disciplinary ticket for assault and disobeying a direct order. Exhibit 2. He lost one year of good time. Exhibit 3. (Tr. 11). Plaintiff testified that, contrary to the allegations in the disciplinary ticket, he did not assault Parnell. (Tr. 5). He also testified that he did not try to harm the officers, did not assault anyone on December 8, and was falsely found guilty. (Tr. 16).

8. Plaintiff was aware that there was a prison rule which required him to cuff up anytime an officer told him to. (Tr. 11).

9. Parnell, Hughes, Higgins, and Best all denied that Ford was beaten after he was removed from his cell, or while he was in the HCU. (Tr. 79, 81, 84-85, 88-89).

9. Plaintiff testified that, on December 12, 1997, he spoke with Warden Page, and that he told Page he needed medical treatment. Page said he would get plaintiff some help.

10. Warden Page referred plaintiff for a psychiatric exam. The report is dated December 10 or 12, 1997, and was offered into evidence by plaintiff as part of his Exhibit 5, and also as Exhibit 10. Both exhibits were admitted into evidence. (Tr. 58). The report states that plaintiff was referred by Warden Page and Superintendent Pierson "because of this inmate's uncontrollable behavior in segregation." The psychiatrist notes that Ford was serving "a lot of

segregation time" and this his behavior had been getting worse, "becoming more and more uncooperative, defiant and aggressive, particularly with security staff."  With regard to the incident of December 8, 1997, plaintiff told the doctor, "They beat me up.  They are harassing me."  However, plaintiff admitted to the doctor that he had refused to cuff up and was uncooperative.  The doctor stated that a review of his record revealed a history of defiant and demanding behavior, both at Menard and at Pontiac.  The doctor observed that plaintiff was "hostile and agitated" and that he was "very much oppositional in his character, very defiant."  Exhibit 5, Bates-stamped page 150; Exhibit 10..

9.      Defendant Carter was a grievance officer at Menard.  He recommended that plaintiff's December, 1997, grievance be denied.  The grievance and his response were admitted in to evidence as Exhibits 9A and 9B.  The nature of the grievance was the disciplinary report that was issued as a result of plaintiff assaulting Parnell and refusing the order to cuff up.  He denied the grievance because he felt the adjustment committee followed the correct procedure.  (Tr. 36).  He did not interpret the grievance as asking him to arrange health care for plaintiff.  (Tr. 38).  He testified that the disciplinary reports and incident reports did not indicate that Plaintiff had been beaten up.  (Tr. 39).

10.     The grievance, 9B, was written on December 15, 1997.  It states that Plaintiff was put back in his cell on December 8, 1997, and was denied medical treatment for the scars, cuts on his hands, bruises to his ribs and back and jaw pain.  Carter testified that the grievance does not state that Plaintiff was still in need of or seeking medical treatment.  (Tr. 39).

11.     Defendant Linda Goforth is a correctional counselor.  She wrote the counselor's response on the December, 1997, grievance, Exhibit 9B.  As is indicated in the response, the grievance as to discipline was referred to the grievance officer.  She testified that she

investigated the portion on staff misconduct, and found it to be unsubstantiated. She wrote in her response that "There is no evidence inmate was physically abused." (Tr. 41).

The Court notes that the excessive force claims made in Count 8 appear to be barred because they necessarily imply the invalidity of plaintiff's conviction on the disciplinary report, which is prohibited by **Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994)**. Where a plaintiff "makes allegations that are inconsistent with the conviction's having been valid, **Heck** kicks in and bars his civil suit." **Okoro v. Callaghan, 324 F.3d 488, 490 (7th Cir. 2003)**. However, the **Heck** rule is an affirmative defense and is not jurisdictional, **Okoro v. Bohman, 164 F.3d 1059, 1061 (7th Cir.1999)**. Defendants failed to raise **Heck** in their motion, and the Court does not base its ruling on **Heck**.

The Court finds that plaintiff failed to present any credible evidence that defendants Parnell, Best, Higgins, or Hughes used excessive force on him. The Eighth Amendment does not prohibit the use of all force against inmates. Rather, it is *excessive* force with offends the Constitution. The prohibition against cruel and unusual punishment prohibits the infliction of "unnecessary and wanton infliction of pain." **Wilson v. Seiter, 501 U.S. 294, 296, 111 S.Ct. 2321 (1991)**. The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." **Hudson v. McMillian, 503 U.S. 1, 7, 112 S.Ct. 995, 999 (1992)**; **Harper v. Albert, 400 F.3d 1052, 1065 (7th Cir. 2005).**

Plaintiff's own testimony establishes that he deliberately flooded his cell and then refused to cuff up after having been ordered to do so. He acknowledged that he was aware that prison rules required him to cuff up whenever ordered to do so. (Tr. 11). No one disputes that mace was used on plaintiff in an effort to get him to obey the order to cuff up. However, there is

simply no credible evidence that any of the defendants used excessive force, or any force at all, on plaintiff after the handcuffs were applied.

In his response, Ford argues that the use of mace on him was excessive. He cites **Thomas v. Woolum, 337 F.3d 720, (6th Cir. 2003)**, a case from another Circuit, in which the plaintiff suffered a broken clavicle, broken ribs, a broken foot, facial lacerations, and massive swelling as a result of a beating by a guard. That case has no relevance to the issue of whether the use of mace was excessive here. Plaintiff also cites **Cooper v. Casey, 97 F.3d 914 (7th Cir. 1996)**, for the proposition that he did not have to present a medical expert witness. That case does not require a holding that the use of mace was excessive here.

"Common sense, moreover, tells us that the prisoners in the disciplinary unit of a maximum security prison are apt to be the worst of the worst and that guards must therefore use more repressive methods in dealing with them." **Cooper, 97 F.3d at 918.** Mr. Ford was in the segregation unit at Menard, which is a maximum security prison. As the Supreme Court has observed, "Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively." **Hudson v. McMillian, 503 at 6, 112 S.Ct. at 998- 999**.

There is no evidence here that the mace was used for the purpose of punishing or humiliating Ford. **See, Fillmore v. Page, 358 F.3d 496, 504 (7th Cir. 2004)**. The Court finds that the use of mace was a good-faith effort to restore discipline, and was not done "maliciously and sadistically to cause harm." **Hudson, 503 U.S. at 7, 112 S.Ct. at 999**. The use of mace on Ford in an effort to get him to obey the order to cuff up is not "force that is repugnant to the conscience of mankind." **Hudson v. McMillian, 503 at 9-10, 112 S.Ct. at 999**.

The Court also finds that defendants did not use excessive force on Plaintiff after he was handcuffed and removed from his cell. Defendants denied that Plaintiff was beaten, either outside his cell or in the HCU. Defendants also denied that plaintiff had to be carried to the HCU.

Having had the opportunity to observe the witnesses, the Court finds plaintiff's testimony that he was beaten both near his cell and in the infirmary to be incredible. Plaintiff produced no witnesses to corroborate his testimony. In order to believe his testimony, the Court would have to accept the proposition that all of the defendants, the unidentified med tech who cleaned plaintiff's eyes, and all other prison employees who observed the proceedings lied to cover up a savage beating. In addition, the inmate in the cell next to plaintiff's in December, 1997, Milton Lee Shepard, was called as a witness by plaintiff. When asked by plaintiff whether he remembered an inmate being carried off the gallery to the infirmary back then, Shepard testified that he did not. (Tr. 68-70, 72). Inmate Don Harris, who was in a nearby cell, also testified that he had no recollection of an inmate being carried off the gallery in December, 1997, or of Officer Best getting a broomstick. (Tr. Vol. 2, 5). The Court would also have to believe that these inmates in very close cells were unaware of these dramatic events, or also lied about them.

If plaintiff's testimony about being thrown to the floor, beaten, stepped on and choked were true, one would expect him to have been seriously injured. However, plaintiff presented no evidence that he suffered any serious injury from the alleged beatings. Plaintiff testified at trial that he suffered "nerve damage" in two fingers of his right hand. He testified that he had pain in his hand for "months." No doctor has ever diagnosed his pain as "nerve damage," and it has evidently subsided. (Tr. 6, 11-12). The Court notes that plaintiff was released from prison in

April , 2003.  See, Doc. 89.  He was arrested again in May, 2004, See, Doc. 119.  There is no evidence that, during the time he was out of prison, he sought any medical treatment for his alleged nerve damage.  Plaintiff's grievance, dated December 15, 1997, claims that he was denied medical treatment on December 8, 1997,  for "scars," cuts on his hands, bruises, and jaw pains.  There is no mention of pain in the fingers of his right hand or nerve damage in the grievance.  Exhibit 9B, page 3.

Plaintiff was seen by a psychiatrist on either December 10 or 12, 1997.  The psychiatrist is, of course, a medical doctor.  This doctor's report notes that Ford claimed that "they beat me up," but does not document any specific claim of injury, nor any sign of any injury.  Exhibit 10.

The Court finds that the injuries claimed by plaintiff are not significant injuries.  See, **Fillmore v. Page, 358 F.3d 496, 504-505 (7th Cir. 2004) (discomfort and sore wrists were not significant injuries)**.  The lack of a significant injury supports the conclusion that any force used was de minimus.  **Outlaw v. Newkirk, 259 F.,3d 833, 837-838 (7th Cir. 2001)**.

The deliberate indifference claim in Count 8 must also fail.

The Eighth Amendment prohibits "deliberate indifference to serious medical needs." **Oliver v. Deen, 77 F.3d 156, 159 (7th Cir.1996)** (quoting **Estelle v. Gamble, 429 U.S. 97, 97 St. Ct. 285 (1976)**).  A condition is objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain."  **Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir.1997)**.

In order to prevail on his deliberate indifference claim, plaintiff must show that the failure to treat was due to a prison official's deliberate indifference to his serious medical needs.  Plaintiff must satisfy the two-part test enunciated in **Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994)**.  The test has both an objective and a subjective component.  That is, plaintiff

8

must show (1) his condition was objectively serious, and (2) the defendant acted with deliberate indifference, which is a subjective standard.  ***Reed v. McBride*, 178 F. 3d 849, 852 (7th Cir. 1999).**  Liability under Section 1983 is personal; plaintiff must satisfy the two-part test as to each defendant in order to recover against that defendant.  There is no respondeat superior liability.  ***Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002).**

As is explained above, plaintiff presented no credible evidence that he suffered any objectively serious injuries at the hands of defendants Parnell, Hughes, Best or Higgins.  He was exposed to mace, but he received prompt treatment for that exposure.  Plaintiff has failed to show that Parnell, Hughes, Best or Higgins were deliberately indifferent to his serious medical needs.

In addition, plaintiff has failed to present any evidence at all that Page, Carter, or Goforth violated his Eighth Amendment rights in December, 1997.  The only involvement of Carter and Goforth is that they processed the December, 1997, grievance.  Plaintiff's grievance, dated December 15, 1997, claims that he was denied medical treatment on December 8 for "scars," cuts on his hands, bruises, and jaw pains.  Exhibit 9B, page 3.  None of those items constitute an objectively serious condition.  A prisoner's Eighth Amendment rights are not violated by a refusal to treat "the sorts of ailments for which many people who are not in prison do not seek medical attention."  ***Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)**.  The grievance of December 15, 1997, did not ask for medical treatment; on page one of the grievance, plaintiff did not check "medical treatment."  The counselor's response, written by Goforth, states that there was no record of bruises or lacerations.  Exhibit 9B, page 1.

Plaintiff did evidently have a conversation with Warden Page in December, 1997.  As a result of that conversation, Page referred plaintiff to a psychiatrist.  (Tr. 32-33).  The

psychiatrist's note, which is dated either December 10 or 12, 1997, does not document any complaints of plaintiff that he was in need of medical treatment, or any objective signs of any injuries.  Exhibit 10.

The motion must be granted as to all defendants on Count 8.

### Findings of Fact and Conclusions of Law as to Count 9

In Count 9, plaintiff alleges that, on January 12, 1998, he was suffering from a bleeding ulcer.  He banged on the door of his cell to get medical attention.  He alleges that defendants Frieman, Ward, and Manning refused to get him medical attention, and then wrote him up for banging on the door.  Lyerla and Carter were later informed of his illness, but refused to provide medical treatment.

The Court makes the following findings of fact with regard to Count 9:

1.  Plaintiff testified that, on January 12, 1998, he vomited blood and food in his cell in the segregation unit at Menard.  He then began kicking the cell door to get attention.  (Tr. 7).

2.  Defendant Frieman came to the cell door and told plaintiff to stop kicking it.  Plaintiff said he needed a med tech.  Frieman left, and plaintiff continued kicking.  (Tr. 7-8).

3.  Plaintiff testified that he continued to kick and bang on the cell door for six hours.  (Tr. 8).  Frieman returned after about an hour, accompanied by other officers, and plaintiff and the officers began "cursing each other out."  (Tr. 8).  Defendant Manning came to the cell later, and told plaintiff to stop kicking the door; plaintiff cursed him out also.  (Tr. 8).  Plaintiff claimed that he also told Manning that he needed to see a med tech and that he had urinated on the floor.  (Tr. 8).

4.  Several tickets were written on January 12, 1998.  At about 3:45 p.m., Frieman wrote a disciplinary report alleging that plaintiff refused a direct order to cease beating on the

door and used profanity (insolence), and charging plaintiff with misuse or damage of property. Exhibit 13, Bates stamped page 106.[1] Frieman wrote another disciplinary report at approximately 8:00 p.m., alleging that plaintiff refused a direct order to cease banging on and kicking the cell door. Exhibit 13, Bates stamped page 103. At 8:25 p.m., Fuller wrote a disciplinary report charging plaintiff with damage or misuse of property after finding a jumpsuit that had been torn in half in plaintiff's cell. Exhibit 13, Bates stamped page 104. At about the same time, Manning wrote a disciplinary ticket charging plaintiff with damage or misuse of property because of graffiti on the wall of his cell, and intimidation or threats, and insolence based on plaintiff's statements such as "Fuck you bitch, you better get your bitch ass away from my door." Exhibit 13, Bates stamped page 111.

    5.    Plaintiff offered into evidence a grievance officer's report written by Tom Carter which stated that plaintiff was found guilty on the tickets. Carter's review of the information indicated that plaintiff did not request medical attention on January 12, 1988, and that no blood was observed on the floor or on his mouth by the officers. Exhibit 13, Bates stamped page 17.

    6.    Sometime after 8:00 p.m., a Lieutenant Pyrtle, who is not a defendant, came to the cell and opened the door. Frieman and other officers came in, and they saw the letters "BK" on the wall, which was the basis for the ticket written by Manning. Plaintiff testified that he told Pyrtle that he needed to see a med tech, but he was ignored. (Tr. 9).

    7.    Plaintiff testified that his gym shoes were taken away from him in an effort to get him to stop banging on the door. He pulled his mattress off the bed and up to the door, and continued beating on the door for two or three days. (Tr. 9).

---

[1] The pages of Exhibit 13 are not in numerical order, and not all of the pages are Bates stamped.

8. Plaintiff admitted in his testimony that a med tech makes rounds every morning in the segregation unit. The med tech comes around early, at about 7:15 to 7:30 a.m. (Tr. 12).

9. Defendant Lyerla was on the adjustment committee that considered the January 12, 1998, tickets. The committee hearing was held on January 20, 1998. Exhibit 13. Lyerla testified that he did not observe anything about plaintiff on January 20, 1998, which indicated that he was in need of medical attention. (Tr. Vol. 2, 9-10).

10. Lyerla testified that, while in segregation, medical staff walk the gallery twice per shift for general medical care. Specialists such as social workers and psychiatrists also walk the gallery. In addition, there is a daily medical call line. (Tr. Vol. 2, 9).

11. Plaintiff's medical records indicate that he was seen on November 6, 1997, for complaints of stomach pain, worse after eating spicy food. He was seen by a Dr. Hartman on November 12, 1997. The note states that plaintiff had a burning sensation after eating, especially in the evening. He was offered Tagamet, but refused, saying he was allergic to it. A lab tech note dated November 17, 1997, indicates that plaintiff refused a test for H-pilory, a bacteria that causes ulcers. (Ex. 5).

12. Attached to plaintiff's Exhibit 5 are photocopies of four notes written by plaintiff to med techs, dated in January, 1998. These notes are each marked in handwriting near the top as exhibit 40, exhibit 41, exhibit 42, and exhibit 43. These were evidently the exhibit numbers assigned to the notes by plaintiff for use in his adjustment committee hearing. The record does not reflect whether these notes were ever received by a med tech, or were seen by any of the defendants before they were produced in this litigation. The pages of Exhibit 5 are not in numerical order, and not all of the pages are Bates stamped. The four notes are not Bates stamped.

13. Defendant Frieman testified that he wrote two tickets on January 12, 1998, at 3:45 p.m. and 8:00 p.m. (Tr. 45-46). The tickets are included in plaintiff's Exhibit 13. The first ticket states that Ford was beating on his cell door, and refused several direct orders to stop. The ticket states that Ford said "Fuck you bitch I'll beat on this door all fucking night if I want to." The second ticket states that Ford was beating on his cell door and refused a direct order to stop.

13. Frieman testified that he did not recall plaintiff asking for medical attention on January 12, 1998, and that he would not have ignored a request for medical attention. (Tr. 47).

14. Defendant Ward testified that he wrote a ticket at 4:45 p.m. on January 12, 1998, which stated that plaintiff cursed him out. (Tr. 52).

15. Defendant Manning testified that he wrote a ticket at about 8:45 p.m. on January 12, 1998, in which he stated he observed the initials BK written on plaintiff's cell wall. (Tr. 55).

16. Defendant Carter testified that he was the grievance officer on plaintiff's grievance relating to the events of January 12, 1998. His investigation of the incident indicated that "none of the staff indicated that you had requested medical help." (Tr. 49-50). He recommended that the grievance be denied. (Ex. 13).

The Court finds that plaintiff has not satisfied either the objective or the subjective standards of the *Farmer* test as to any of the defendants on this count. Plaintiff presented no evidence that he was suffering from an objectively serious medical condition on January 12, 1998. He may or may not have vomited food and some blood. According to his own testimony, it was not much, and he only vomited one time. (Tr. 7). Plaintiff did not offer any evidence at all that he was ever diagnosed with or treated for an ulcer at any time, either in or out of prison, after January of 1988. This is not a situation like *Greeno v. Daley*, **414 F.3d 645, 651 (7th Cir. 2005)**, in which the Seventh Circuit held that severe heartburn and repeated vomiting of blood

13

over two years demonstrated a medical need that a layperson should have realized was serious.

In any event, plaintiff's evidence failed to demonstrate that any defendant was aware of any facts from which he should have drawn the conclusion that plaintiff was in need of immediate medical attention. The prison staff members who had contact with him that day denied seeing blood in his cell. When plaintiff appeared before the adjustment committee on January 20, 1998, he did not appear to be in need of medical attention. (Tr. Vol. 2, 9-10).

## Conclusion

For the foregoing reasons, defendants' Renewed Motion for Judgment as a Matter of Law **(Doc. 143)** is **GRANTED**. The Clerk of Court is directed to enter judgment in favor of defendants Page, Lyerla, Parnell, Hughes, Manning, Ward, Best, Higgins, Hasemeyer, Goforth, Carter, and Frieman, on Counts 8 and 9 of the amended complaint, **Doc. 10**.

This is a final order disposing of all claims and all parties.

**IT IS SO ORDERED.**

**DATE:  September 29, 2005.**

                                             **s/ Clifford J. Proud**
                                             **CLIFFORD J. PROUD**
                                             **UNITED STATES MAGISTRATE JUDGE**